IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM T. DIVANE, JR., MICHAEL J. CADDIGAN, SAMUEL EVANS, MICHAEL FITZGERALD, THOMAS C. HALPERIN, DAVID A. HARDT, DANIEL MEYER, RICHARD SIPPLE, and MICHAEL L. WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES, <br><br> Plaintiffs, <br><br> v. <br><br> KRULL ELECTRIC CO., INC., and JOHN J. CURRY, JR. <br><br> Defendants. | No. 95 C 6108 <br><br> Hon. George W. Lindberg <br> Presiding Judge |

FILED OCT 23 2002
JUDGE GEORGE W. LINDBERG
UNITED STATES

DOCKETED OCT 28 2002

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Now comes the Defendant, **JOHN CURRY**, by his attorneys Foran, Nasharr & O'Toole LLC, and submits the following Memorandum in support of his Motion for Summary Judgment states the following:

### BRIEF STATEMENT OF FACTS

On or about March 31, 1998, John Curry and his wife Jamie Curry conveyed their personal residence, located at 1612 N. Wolcott, Chicago, Illinois (P.I.N. 14-31-424-045) by Quit Claim Deed to John Curry and Jamie Curry, the same persons stated above, as tenants by the entirety. Prior to the conveyance, they held title to the property in joint tenancy.

The conveyance described above was made for various reasons. Among those reasons were the following:

(a) Joint financial planning and estate planning: John and Jamie Curry acquired the subject real estate, as joint tenants, prior to their marriage in September 1997. It was their intention to protect this particular asset, particularly since it was their primary residence, by re-conveying the property into tenancy by the entirety sometime after their marriage in September 1997.

(b) Risk management: At all relevant times, John Curry was engaged with the private practice of law and was affiliated with a small private practice. As such, he was always at risk, to some degree, to personal professional malpractice exposure, even though he had, at all times, attorney malpractice insurance coverage. However, because of the possibility of personal exposure over and above the limits of the malpractice insurance coverage, Curry desired to protect his primary residence as much as possible from professional malpractice exposure.

(c) Joint asset protection planning: John and Jamie Curry had agreed, as part of their joint financial planning in 1997, that they would prioritize the holding of any of their joint assets so that their marital residence would be their last joint possession subject to any collection by any creditor. Thus, conveyance into tenancy by the entirety was contemplated to achieve this objective.

At all times relevant, John Curry was able to pay his debts as they came due, and further would have been able to pay his debts if the sanction award of March 24, 1998 had become due. All of the foregoing was disclosed to Plaintiffs through John Curry's Answers to Interrogatories delivered on November 27, 2000.

## ARGUMENT

### BECAUSE DEFENDANT CURRY MADE THE SUBJECT TRANSFER INTO TENANCY BY THE ENTIRETY WITHOUT THE SOLE INTENT TO AVOID PAYMENT OF DEBTS EXISTING AT THE TIME OF THE TRANSFER BEYOND HIS ABILITY TO PAY THOSE DEBTS AS THEY CAME DUE, SAID TRANSFER WAS NOT VOIDABLE AS A FRAUDULENT CONVEYANCE.

In Illinois, the Uniform Fraudulent Transfer Act ("UFTA") has been adopted to provide certain remedies to creditors to avoid transfers by debtors made to prevent the creditors' recovery. 740 ILCS 160/1 et seq. UFTA provides that " a transfer made... is fraudulent as to a creditor... if the debtor made the transfer..." under certain specified circumstances prejudicial to the creditor. 740 ILCS 160/5(a). Under UFTA, "'Transfer' means every mode... of disposing of or parting with an asset or an interest in an asset." 740 ILCS 160/2(1). Thus, in order for a creditor to bring an action against a debtor under UFTA, the creditor must establish that there was a transfer by the debtor of an asset.

Under UFTA, the term "asset" means property of a debtor, but the term does not include "an interest in property held in tenancy by the entirety to the extent it is not subject to process by a creditor holding a claim against only one tenant." 740 ILCS 160/2(b)(3).

Relative to the foregoing provisions, the Illinois Code of Civil Procedure, at § 12-112, provides the following:

> Any real property... held in tenancy by the entirety shall not be liable to be sold upon judgment entered... against only one of the tenants, except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they became due.

735 ILCS 5/12-112.

Therefore, property held in tenancy by the entirety is not subject to process by a creditor holding a claim against only one tenant, and so is not an asset for purposes of the UFTA, unless the sole intent standard set forth in § 12-112 is met, that is, it is proven that the transfer was made "with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they became due." *Premier Property Management Inc. v. Chavez*, 191 Ill.2d 101, 110-11, 728 N.E.2d 476, 482 (2000); *In re Mukhi*, 246 B.R. 859, 863-64 and n.1 (Bkrtcy N.D.Ill. 2000); *Divane v. Krull Electric Co.*, 95 C 6108, Mem.Op. (N.D.Ill. Sept. 19, 2000).

A creditor who seeks to set aside a transfer to Tenancy by the Entirety under UFTA and § 12-112 above bears the burden of proof to show that, at the time of the transfer, the debtor was unable to pay his existing debts as they became due and that the debtor transferred his property with the sole intent and exclusive purpose of avoiding those debts. *In re Stacy*, 227 B.R. 272, 278 (Bkrtcy. N.D.Ill. 1998). This burden has been considered to be "difficult" and "substantial" on the part of the creditor. *Id.*

Two simple facts prevent the Plaintiffs from establishing any rights under UFTA with respect to Defendant Curry's transfer on March 31, 1998. First, Curry's intent on making the transfer included other purposes above and beyond any intent to avoid payment of debts existing at the time of the transfer beyond his ability to pay those debts as they came due. Evidence of the intent at the time of the transfer is set forth in the Local Rule 56.1 Statement and the accompanying affidavits. Secondly, at the time of the transfer, Defendant Curry was able to pay his then existing debts as they came due, even if one includes the amount of the sanction award at that time.. This has been made abundantly evident to the Plaintiffs through Defendant Curry's prior disclosures to the Plaintiffs. Conclusive evidence of this is also contained in the Local

Rule 56.1 Statement and the accompanying affidavits. Because the facts are to the contrary, the Plaintiffs will be unable to sustain their burden of proof. If a movant proves that there is no genuine issue of material fact, the movant is entitled to entry of summary judgment. Fed.R.Civ.P. 56(c); *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995). The district court may grant summary judgment against a party who cannot establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S 317, 322-23 (1986). Judgment must be entered against Plaintiffs and in favor of Defendant Curry.

Any argument that Defendant Curry would attempt to evade or avoid any payment of a judgment after appeal is neither reasonable nor rational. Curry is an attorney licensed to practice law in Illinois. The practice of law is his sole livelihood, which he intends to pursue until death or retirement. An absolute refusal to pay the final judgment in this case, or his undertaking of any intentional fraudulent conveyance in order to claim inability to pay the judgment when due, would constitute a violation of the Illinois Rules of Professional Conduct and thereby subject him to possible suspension of his license or disbarment. See Illinois Rules of Professional Conduct, Rule 3.3(a)(7); Rule 8.4(a)(4)-(5). These rules are substantially similar, in these respects, to the ABA Model Rules of Professional Conduct. Accordingly, Curry's refusal or intentional evasion regarding ultimate payment of the judgment would be a violation of his professional responsibility in Illinois and subject him to discipline. *See In re Robert H. Aronson*, M.R. 2638 (Ill. 1981); *In re Craig D. Warren*, M.R. 2193 (Ill. 1979). It has been held elsewhere that a lawyer that fails to obey an order of court to reimburse another party for attorney's fees arising out of a frivolous motion is a violation and requires discipline under the Model Rules. *People v. Huntzinger*, 967 P.2d 160 (Colo. 1998). It has been also held elsewhere that a lawyer's

deliberate violation of a court order is a violation and requires discipline under Model Rules. *In re Gabriel*, 837 P.2d 149 (Ariz. 1992). Thus, it is highly unreasonable to anticipate that, should Defendant Curry's pending appeal be unsuccessful, he will either refuse or wrongfully avoid payment of the judgment, with accrued interest, when due. Similarly, it is highly unreasonable to conclude that the property transfer at issue was accomplished to simply avoid satisfaction of the judgment. Plaintiffs have no evidence to the contrary. The transfer merely insulated the Curry's residence from certain types of creditor attack at a time when John Curry himself had sufficient cash and other assets with which to pay his then existing debts and the sanction award. The existence of the sanction alone is not an event which triggers an implicit freeze on all of the judgment debor's property when he is capable of satisfying the judgement.

In any event, the facts show that Plaintiffs will be incapable of proving the Section 12-112 exceptions necessary to trigger a judicial order affecting the subject property. The Plaintiffs were put on notice of the same when answers to interrogatories were served upon them on November 27, 2000.

Tellingly, after the answers were served, Plaintiffs undertook no further action to prosecute their complaint: no further discovery and no further moitons. Despite their apparent awareness that there existed no facts to controvert the fact that the subject transfer was legitimate under law and not subject to UFTA, the Plaintiffs refused to abandon their claim and in fact have resisted all prior attempts to have the case dismissed. Also tellingly, when this case was last set for trial, Plaintiffs' counsel advised the clerk of this court, approximately one business day before trial was to begin, that Plaintiffs had *no witnesses* to present in their case in chief. (The case was thereafter removed from the court's trial call.) Plaintiffs' failure to marshal even one witness to

controvert what they knew to be the defense at trial further reflects the lack of any genuine issue of material fact. *See Celotex, supra.*

## CONCLUSION

There is no genuine issue of material fact related to any of the following facts:

1. The transfer at issue was not made with the sole intent to avoid the payment of debts existing at the time of the transfer beyond Defendant's ability to pay those debts as they became due.

2. The transfer did not render Defendant incapable of paying his debts, including the sanction award, when they came due, assuming the sanction debt had come due, because Defendant was capable of paying all of the foregoing as the debts came due.

Summary Judgment must be entered in favor of Defendant Curry and against Plaintiffs, with costs assessed.

Respectfully submitted,

JOHN CURRY

By: _____
One of Respondent's attorneys

John J. Curry
Foran, Nasharr & O'Toole LLC
55 West Wacker Drive, Suite 925
Chicago, Illinois 60601
(312) 704-4444
Cook County Atty. No.: 29049

# CERTIFICATE OF SERVICE

The undersigned, being first duly sworn on oath, deposes and says that the foregoing **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served upon the following named parties or counsel of record:

> David Shannon, Esq.
> Tenney & Bentley
> 111 West Washington Street
> Suite 1900
> Chicago, Illinois 60602
> (312) 807-4858

by hand delivery, on or before 5:00 p.m. on this 23rd day of October, 2002.

_____

Subscribed and Sworn to
before me this 23rd day
of October, 2002.

_____
NOTARY PUBLIC

OFFICIAL SEAL
SARAH F STOKLAS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 6/24/05